IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LEGACY CARBON LLC,                )    CIVIL NO. 17-00231 SOM-KJM
                                  )
          Petitioner,             )
                                  )    **ORDER DENYING WITHOUT**
     vs.                          )    **PREJUDICE PETITION TO COMPEL**
                                  )    **ARBITRATION OF THIRD-PARTY**
TIFFANY POTTER,                   )    **CLAIMS AGAINST TIFFANY POTTER**
                                  )
          Respondent.             )
_____    )


**ORDER DENYING WITHOUT PREJUDICE PETITION TO COMPEL ARBITRATION
OF THIRD-PARTY CLAIMS AGAINST TIFFANY POTTER**

I.        **INTRODUCTION.**

          The main issue before this court is whether Tiffany

Potter, President of Streamline Consulting Group LLC, is

compelled to arbitrate claims brought against her in her

individual capacity by Legacy Carbon LLC.  Legacy Carbon and

Potter ask this court to rule on the present petition based on

the papers.  The petition is denied.  However, Legacy Carbon may

file an amended petition within thirty days of the date of this

order.

          Any amended petition must include an exhibit clearly

and thoroughly identifying all claims Legacy Carbon proposes to

pursue against Potter in her individual capacity.  This exhibit

must include the factual basis for each claim.  If the amended

motion seeks discovery, the specific discovery and the legal authority to conduct discovery must be set forth.

## II.      BACKGROUND.

On January 3, 2014, Streamline Consulting Group, a District of Columbia limited liability company, entered into a contract with Hawaiian Legacy Carbon LLC. ("Services Agreement"). *See* Petition to Arbitrate, Exhibit A, ECF No. 1-2, PageID #s 16-18. *See also Streamline Consulting Group LLC v. Legacy Carbon LLC*, Civ. No. 15-00318 SOM-KSC, 2016 WL 347301, at *1 (D. Haw. Jan. 27, 2016). The Services Agreement states that Streamline "is a consulting practice managing information, communication, due diligence services, and capacity building for private or public sector entities that develop eco-assets." ECF No. 1-2, PageID # 16. It says that Hawaiian Legacy Carbon, also known as Legacy Carbon, "through its affiliate[,] Hawaiian Legacy Hardwoods, is a project developer that plants trees, restores degraded land, provides ecotourism, and creates products in the form of RFID tacks and ecosystem service credits." *Id.*

Pursuant to the Services Agreement, Streamline was to "assist in implementing [Legacy Carbon's] business plan." *Id.* In return, Legacy Carbon and Hawaiian Legacy Hardwoods promised to pay a fee of 3.5% of the "awarded project funding." *Id.*

2

The Services Agreement has an arbitration clause stating:

> Any controversy or claim arising out of, or relating to this agreement, or breach thereof, which is not settled amicably by and between the signatories within a period of 30 days shall be settled through binding arbitration in accordance with the laws of the defending state.

*Id.*, PageID # 18.

In early January 2014, the Services Agreement was signed on behalf of Legacy Carbon by Jeffrey Dunster, its co-founder, and on behalf of Streamline by Tiffany Potter, its President. *Id.*

On or about December 17, 2013, a few weeks before the Services Agreement was executed, Hawaiian Legacy Hardwoods, entered into a Non-Circumvention Agreement with Streamline. *See id.; see also* Petition to Arbitrate, Exhibit E, ECF No. 1-6, PageID #s 109-13. According to the terms of the agreement, Hawaiian Legacy Hardwoods agreed not to

> circumvent, avoid, bypass, or obviate directly or indirectly, the creation or pursuit of the Collaboration [defined as the mutually beneficial business relationship that might involve third parties] by entering into any direct or indirect negotiations, communications, or transactions with, or by soliciting or accepting any business or financing from or on behalf of an Introduced Party . . . .

ECF No. 1-6, PageID # 111.  Hawaiian Legacy Hardwoods promised

to pay Streamline a fee of 20% of the total value of money

involved if it breached this non-circumvention provision.  *Id.*

The Non-Circumvention Agreement was executed by

Dunster on behalf of Legacy Hardwoods, LLC, even though it was

Hawaiian Legacy Hardwoods that was listed as a party to the

agreement,[1] *see id.*, PageID # 109, and by Potter on behalf of

Streamline, *see id.*, PageID # 113.

On October 21, 2014, Streamline sent a demand for

arbitration of its claims that the Services Agreement and Non-

Circumvention Agreement had been breached.  The demand went to

Legacy Carbon LLC, dba Hawaii Legacy Carbon, dba Hawaiian Legacy

Hardwoods.  *See* Exhibit B, ECF No. 1-3, PageID #s 20-22.  The

Legacy entities responded that only Legacy Carbon, the company

that had signed the Services Agreement, was subject to the

mandatory arbitration provision.  *See* Exhibit C, ECF No. 1-4,

PageID #s 64-69.  The parties chose former Hawaii Supreme Court

Associate Justice James Duffy as their arbitrator.  *See*

*Streamline Consulting Group LLC*, 2016 WL 347301, at *3.

---

[1]    In an order filed on January 27, 2016, in a related
case, this court discussed piercing the corporate veil, alter
ego, and joint tortfeasor liability with respect to the Legacy
parties.  *See Streamline Consulting Group LLC*, 2016 WL 347301,
at *2-3.

In light of a dispute about which parties were subject to arbitration, Streamline commenced a suit in this court against the following entities: Legacy Carbon LLC, dba Hawaiian Legacy Carbon; Hawaiian Legacy Reforestation Initiative, dba Hawaiian Legacy Hardwoods, dba Hawaiian Legacy Forests, dba, Legacy Forest, dba Legacy Trees; HLH LLC, aka Hawaiian Legacy Hardwoods, LLC; Legacy Hardwoods, Inc., aka Hawaiian Legacy Hardwoods, Inc.; Legacy Holdings LLC, aka Hawaiian Legacy Holdings, LLC; and Jeffrey Dunster individually ("Legacy Defendants"). *See id.* at *1; *see also* Exhibit H, ECF No. 1-9, PageID #s 150-82. Legacy Defendants sought dismissal of certain claims and an order compelling arbitration of other claims. Exhibit J, ECF No. 1-11, PageID #s 184-328; Exhibit K, ECF No. 1-12, PageID #s 331-53. Streamline filed a countermotion seeking to compel arbitration of all claims. Exhibit L, ECF No. 1-13, PageID #s 355-95.

On January 27, 2016, this court compelled arbitration of claims arising under both the Services Agreement and the Non-Circumvention Agreement. *Streamline Consulting Group LLC*, 2016 WL 347301, at *5-6. However, the court retained jurisdiction to decide which Legacy Defendants were bound by the arbitration provision in the Services Agreement. *Id.* at *7. Faced with litigation over which Legacy Defendants were required to

arbitrate, the parties entered into a Stipulation to Stay the Proceedings Pending Arbitration and to Refer All Issues to Arbitration ("Stipulation").  *See* Exhibit N, ECF No. 1-15, PageID #s 420-22.  The parties agreed that "all [Legacy] Defendants will submit to arbitration."  *Id.*, PageID # 421.  The parties also agreed to refer to arbitration "(i) all Plaintiff's claims that were or could have been raised in this action; (ii) all [Legacy] Defendants' defenses, counterclaims, and third-party claims that could have been raised in this action; and (iii) all Plaintiff's defenses that could have been raised in this action."  *Id.*  This court approved the Stipulation, which was signed by attorney John Winnicki on behalf of Streamline, and by attorney Christopher Muzzi on behalf of all Legacy Defendants.  *See id.*, PageID # 422.

Thereafter, the parties raised with the arbitrator the issue of whether claims against Potter, who had not been individually named in the earlier lawsuit filed in this court, were arbitrable.  The arbitrator stayed arbitration proceedings to allow the present motion asking this court to compel arbitration of claims against Potter.

III.     **ANALYSIS.**

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving interstate

commerce.  *See* 9 U.S.C. § 2.  Under the FAA, arbitration

agreements "shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the

revocation of any contract." *Id.*  "A party aggrieved by the

alleged failure, neglect, or refusal of another to arbitrate

under a written agreement for arbitration may petition" a

federal district court with jurisdiction "for an order directing

that such arbitration proceed in the manner provided for in such

agreement." *Id.* § 4.

> **A.  This Court, Not an Arbitrator, Should Decide
> Whether the Arbitration Agreement and/or
> Stipulation Binds Potter, Who Did Not
> Individually Sign Those Agreements.**

There are two categories of "gateway issues" on a

petition to compel arbitration.  *See Martin v. Yasuda*, 829 F.3d

1118, 1122-23 (9th Cir. 2016).  The first category concerns the

"question of arbitrability," or rather, "whether the parties

have submitted a particular dispute to arbitration." *Howsam v.

Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  "This

category includes issues that the parties would have expected a

court to decide such as 'whether the parties are bound by a

given arbitration clause' or whether 'an arbitration clause in a

concededly binding contract applies to a particular type of

controversy.'"  *Martin*, 829 F.3d at 1123 (quoting *Howsam*, 537

U.S. at 84); *see, e.g., First Options of Chicago, Inc. v.*

7

*Kaplan*, 514 U.S. 938, 943-46 (1995) (determining that a court should decide which parties agreed to arbitration); *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241-45 (1962) (ruling that a court should decide whether the term "grievances" in the arbitration agreement covered claims for damages for breach of a no-strike agreement). These gateway matters are "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (quoting *AT&T Techs., Inc. v. Comms. Workers*, 475 U.S. 643, 649 (1986)).

The second category of gateway issues relates to procedural questions that "grow out of the dispute and bear on its final disposition." *Id.* at 84 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964)). These procedural disputes, which may include issues such as waiver, delay, or similar defenses to arbitrability, "are presumptively *not* for the judge, but for an arbitrator to decide." *Id.*

Legacy Carbon asks this court to compel Potter to arbitrate third-party claims it proposes to assert against her. This is not a procedural question bearing on the final disposition of the third-party claims. Rather, it falls within the first category of gateway disputes reserved for judicial determination. The record does not demonstrate that the parties have "clearly and unmistakably" agreed to submit the question of

8

the arbitrability of claims against Potter individually to arbitration. *See First Options of Chicago, Inc.*, 514 U.S. at 943 ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, . . . so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (citations omitted)).  Accordingly, it falls to this court to determine whether claims against Potter are arbitrable and whether Potter is bound by the Services Agreement and/or Stipulation.

### B.    The Present Record Does Not Establish That Claims Against Potter Are Subject to Arbitration.

The court turns first to the question of whether the claims in issue are arbitrable because they fall within the scope of a valid arbitration agreement.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.").  Questions of arbitrability are addressed in favor of arbitrability such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  "Thus, as with any other contract, the parties' intentions control, but those

9

intentions are generously construed as to issues of arbitrability." *Id.*

The arbitration clause in the Services Agreement provides, "Any controversy or claim arising out of, or relating to this agreement, or breach thereof, which is not settled amicably by and between the signatories within a period of 30 days shall be settled through binding arbitration in accordance with the laws of the defending state." ECF No. 1-2, PageID # 18. Claims against Potter, even if arising out of or relating to the Services Agreement, are not expressly and unambiguously identified in the Services Agreement.

On February 13, 2015, during arbitration proceedings, Legacy Carbon nevertheless asserted third-party claims against Potter, alleging breach of the duty of good faith and fair dealing and negligence/intentional misrepresentation relating to Potter's individual conduct under the Services Agreement. ECF No. 1, PageID # 6; ECF No. 1-7, PageID #s 134-39.

On September 2, 2016, the court approved and filed a Stipulation to Stay the Proceeding Pending Arbitration and to Refer All Issues to Arbitration, which was signed by counsel for both Streamline and all named Legacy Defendants, including Legacy Carbon. ECF No. 59, PageID # 621. Potter does not appear to have been expressly named as a party to the

10

Stipulation in her individual capacity, although the signatories
stipulated and agreed to refer to arbitration all of Legacy
Defendants' "third-party claims that could have been raised in
this action." *Id.*

It is not clear what was contemplated when Streamline
and all Legacy Defendants agreed to arbitrate all Legacy
Defendants' "third-party claims that could have been raised in
this action." Although Potter, as Streamline's President,
presumably knew that claims against her might have been
contemplated, this court cannot tell what was intended with
respect to Potter when Streamline and Legacy Defendants entered
into the Stipulation. Additionally, this court is unable to
determine exactly what claims Legacy Carbon now seeks to pursue
against Potter in arbitration, and whether such claims must be
resolved by an arbitrator.

Potter appears to have signed the Services Agreement
containing the arbitration clause on behalf of Streamline as its
President, not in her individual capacity. *See* ECF No. 1-2,
PageID # 18. Similarly, counsel for Streamline signed the
Stipulation on behalf of only the LLC, not Potter in her
individual capacity. Although federal law establishes a strong
policy in favor of compelling arbitration, *see Mitsubishi Motors
Corp.*, 473 U.S. at 625, arbitration is "a matter of contract and

a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc.*, 475 U.S. at 648 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

However, the Ninth Circuit has recognized that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). "Among these principles are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). "In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries." *Id.*

This court turns to the theories argued here: assumption, agency, and estoppel (direct benefits and judicial). Incorporation by reference and veil piercing/alter ego theories have not been advanced.

### 1. Assumption.

In the absence of a signature, a party may be bound by an arbitration clause if subsequent conduct indicates that the party is assuming the obligation to arbitrate. *Invista S.A.R.L.*

*v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010); *see also Thomson-CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773 (2d Cir. 1995). "[N]on-signatories may assume the obligations contained in an arbitration clause where there is a sufficiently close relationship to justify doing so, and the circumstances warrant that result." *Invista S.A.R.L.*, 625 F.3d at 85.

In *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991), the court held that flight attendants had manifested a clear intention to arbitrate a dispute because the flight attendants had sent a representative to act on their behalf during arbitration proceedings and did not object to the process, refuse to arbitrate, or make any attempt to seek judicial relief.

Potter was Streamline's President when the LLC entered into the Stipulation. But Streamline's agreement to the terms of the Stipulation does not, on its own, make Potter clearly required to arbitrate claims against her personally. Absent additional conduct indicating that Potter clearly assumed an obligation to arbitrate, this court declines to apply the assumption theory to the present record.

## 2. Agency.

Legacy Carbon asserts that Potter acted as Streamline's agent and therefore is subject to the arbitration provision in the Services Agreement and to the Stipulation.

Agency theory may justify applying an arbitration clause to a nonsignatory. *See Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1240-41 (D. Haw. 1999). "Federal courts have consistently afforded agents, employees, and representatives the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." *Id.* at 1240. Courts have followed "the well-settled principle affording agents the benefits of arbitration agreements made by their principal." *Arnold v. Arnold Corp.-Printed Comms. for Bus.*, 920 F.2d 1269, 1282 (6th Cir. 1990). *See, e.g.*, *id.* (holding that corporate officers and directors were bound by an arbitration agreement when the allegedly wrongful behavior related to their capacities as agents of the corporation); *Letizia*, 802 F.2d at 1187 (holding that a broker's nonsignatory employees were entitled to an agreement's arbitration clause in a lawsuit in which the plaintiff asserted claims of fraud and federal

securities violations against his brokerage account executive and supervisor).

Courts have reasoned that, if agents could not invoke arbitration provisions signed by their principals, then a party could easily "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties [as defendants] in his complaint or signatory parties in their individual capacities only," which would effectively nullify an arbitration agreement. *Arnold*, 920 F.2d at 1281 (citation omitted).

However, the Ninth Circuit has not expressly addressed the situation in which a signatory seeks to invoke an arbitration clause against a nonsignatory agent. Indeed, few courts have relied on an agency theory in that situation. *See, e.g.*, *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 445-46 (3d Cir. 1999) (declining to bind an agent who had not signed the underlying agreement to the agreement's arbitration clause); *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1054-55 (D. Or. 2004) (hesitating to apply the agency exception when a signatory plaintiff sought to compel a nonsignatory defendant to arbitrate).

Under agency law, "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the

contract." *Legacy Wireless Servs., Inc.*, 314 F. Supp. 2d at

1054 (quoting Restatement (Second) of Agency § 320).  Potter was

apparently acting on behalf of a disclosed principal and, absent

more, is not bound to the terms of the contract under agency

law.  *See id.*  Arbitration is generally contractual in nature,

making agency principles applicable when a signatory seeks to

compel a nonsignatory agent to arbitrate claims.  *See id.*

"Basic fairness principles more readily favor holding a

*signatory* to a contract to which it specifically agreed."  *Id.*

at 1055 (citing *Bel-Ray Co.*, 181 F.3d at 445, and *Clausen v.

Watlow Elec. Mfg. Co.*, 242 F. Supp. 2d 877, 883-84 (D. Or.

2002)).

Based on the current record, this court declines to

apply the agency exception to Potter with respect to either the

Services Agreement or the Stipulation.

### 3.  Estoppel.

Legacy Carbon says that Potter should be required to

submit to arbitration under an estoppel theory.  Two types of

estoppel are advanced--direct benefits estoppel and judicial

estoppel.

### a.  Direct Benefits Estoppel.

The Ninth Circuit has observed, "Equitable estoppel

typically applies to third parties who benefit from an agreement

16

made between two primary parties." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). "Equitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) (citation omitted). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* at 418.

When a nonsignatory seeks to compel a signatory to arbitrate, the primary inquiry is whether the claims brought by the signatory against the nonsignatory are "intertwined" with the underlying agreement. *Legacy Wireless Servs., Inc.*, 314 F. Supp. 2d at 1056. However, when a signatory seeks to compel a nonsignatory to arbitrate: the "signatory may not estop [the] nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 62 (2d Cir. 2001).

Legacy Carbon seeks to compel a nonsignatory to arbitrate. The inquiry for this court is whether the "nonsignatory 'knowingly exploits' the benefits of the agreement and receives benefits flowing directly from the agreement." *Nguyen*, 763 F.3d at 1179. A nonsignatory is estopped from refusing to comply with an arbitration clause "when it receives a 'direct benefit' from a contract containing an arbitration clause." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (citing *Thomson-CSF*, 64 F.3d at 778-79); *see also MAG Portfolio Consultant, GMBH*, 268 F.3d at 61-63 (concluding that benefits did not "flow" from the purchase contract agreement itself); *Int'l Paper Co.*, 206 F.3d at 418 ("A nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a 'direct benefit' from a contract containing an arbitration clause.'" (citation omitted)); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1064 (2d Cir. 1993) (concluding that a nonsignatory was bound to arbitrate when it knew of the arbitration agreement and "knowingly accepted the benefits of" that agreement); *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F. Supp. 2d 519, 521 (E.D. Pa. 2003) ("[T]he party seeking to enforce the arbitration clause must show that the non-signatory to be bound received a

'direct benefit' from the contract containing the clause."
(citation omitted)).

        As with the agency exception, the Ninth Circuit has
not applied direct benefits estoppel when a signatory seeks to
bind a nonsignatory to an arbitration agreement.  *See Nguyen*,
763 F.3d at 1179 (applying the direct benefits estoppel theory
but finding the nonsignatory not bound by an arbitration
agreement).  "[F]ederal courts have been hesitant to apply the
estoppel theory against nonsignatories."  *Legacy Wireless
Servs., Inc.*, 314 F. Supp. 2d at 1055 (citing *MAG Portfolio
Consultant, GMBH*, 268 F.3d at 62, and *Bridas S.A.P.I.C. v.
Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003)).  This is in
part because "[r]equiring nonsignatories to arbitrate introduces
an element of unpredictability to parties' private affairs,
thereby compelling a greater degree of vigilance in applying
arbitration clauses."  *Id.* at 1055-56.  Cases applying direct
benefits estoppel tend to involve nonsignatories asserting
claims against signatories based on the underlying agreement.
As the district court said in *Legacy Wireless Services, Inc.*,

            There is an important distinction, however,
            between cases where the courts seriously consider
            applying direct benefits estoppel, and the case
            at bar.  In the former, the nonsignatory had
            brought suit against a signatory premised in part
            upon the agreement.  Here, it is undisputed that
            the [nonsignatory] has not sued [the signatory]
            under the agreement.  The [nonsignatory] has thus

> not "exploited" the [underlying agreement] to the
> degree that the cases that consider applying this
> version of estoppel require.

314 F. Supp. 2d at 1057 (quoting *Bridas S.A.P.I.C.*, 345 F.3d at

362).

However, as the United States District Court of Oregon

has observed, some courts focus "on whether the nonsignatory

'*directly* benefitted' from the agreement," not on whether the

nonsignatory is suing a signatory under the agreement. *Id.*

(citing *Thomson-CSF*, *Int'l Paper Co.*, and *Am. Bureau of*

*Shipping*). This court agrees that when a nonsignatory is not

suing a signatory, the court should examine whether that

nonsignatory has "directly benefitted" from the agreement.

Otherwise, a nonsignatory could "knowingly exploit" the

underlying agreement and receive a direct benefit by not

asserting any claims against a signatory. The dispositive issue

is whether the nonsignatory actually "received direct benefits"

from the contract. *Id.* (citation omitted).

Legacy Carbon argues that Potter individually received

direct benefits from the Services Agreement as the sole

principal and sole provider of services under the Services

Agreement, positing that "Potter is effectively Streamline, but

for the limited liability conferred on her related to

Streamline's debts." ECF No. 9, PageID #s 507-08.

Potter responds that these are factually incorrect assertions, arguing that several analysts, other than Potter, performed services under the Services Agreement on behalf of Streamline. ECF No. 16, PageID # 586; *see also* Surreply, Exhibit B, ECF No. 16-3, PageID # 601; Exhibit C, ECF No. 16-4, PageID # 602. Potter points to invoices attached to the surreply in support of her argument. These invoices, however, date back to January 11, 2013, and January 29, 2013, which is almost a year before Legacy Carbon and Streamline executed the Services Agreement at issue. It is not clear that the matters now in issue arise under circumstances like those in effect in 2013. The record does not establish that Potter was the sole service provider under the Services Agreement. While she was Streamline's President at the time the Services Agreement was executed, other hired analysts and staff members could have performed services under the Services Agreement on Streamline's behalf. Potter may have had an important role in the creation of the agreement and in fulfilling Streamline's contractual obligations, but Legacy Carbon's assertions as to Streamline's corporate structure and as to Potter's status and role under the agreement are not themselves determinative of whether Potter is bound by any arbitration agreement.

Part of the problem with Legacy Carbon's argument is that it would nullify the corporate form of any wholly owned entity. It would pierce the corporate veil and make every 100% owner the alter ego of the entity. But Legacy Carbon has not expressly asked this court to pierce Streamline's corporate veil or to consider Potter the alter ego of the LLC. Even if Legacy Carbon had raised that issue, the record lacks sufficient information allowing this court to pierce the corporate veil and declare Potter the alter ego of the company. *See Bridas S.A.P.I.C.*, 345 F.3d at 359 ("Alter ego determinations are highly fact-based, and require considering the totality of the circumstances in which the instrumentality functions."); *MAG Portfolio Consultant, GMBH*, 268 F.3d at 63 (noting that "[d]etermining that veil-piercing is appropriate is a 'fact specific' inquiry").

Legacy Carbon also asserts that Potter received direct benefits from the Services Agreement in the form of financial compensation and having her name and biography included on Legacy Carbon's and other Legacy Defendants' marketing materials and websites. *See* ECF No. 1-2, PageID # 16; *see also Am. Bureau of Shipping*, 170 F.3d 349 (recognizing that direct benefits included "significantly lower insurance rates" and "the ability to sail under the French flag"). Without the Services

Agreement, Legacy Carbon suggests, Potter would not have been able to bolster her personal reputation and networking connections, which in turn might have promoted business opportunities for her individually and for Streamline. However, again, the record is insufficient to support these assertions.

Potter's position is that she only received financial compensation as an "indirect" benefit based on the operating agreement between her and Streamline. *See MAG Portfolio Consultant, GMBH*, 268 F.3d at 61 (noting that "the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself"); *see also Thomson-CSF*, 64 F.3d at 778-79 (concluding that a nonsignatory received only an indirect benefit of squeezing a signatory out of the market by exploiting the underlying agreement). However, an invoice dated July 4, 2014, for services provided in May 2014 under the Services Agreement appears to call for direct payment to Potter personally, specifically stating, "Make all payments to Tiffany McCormick Potter." ECF No. 1-5, PageID # 96. This is a deviation from other invoices from around that time calling for payments to be made to "Streamline Consulting Group." *Id*. The amount of $4,536 in the July 2014 invoice is part of the damages that

Streamline seeks in its Complaint in Civil No. 15-00318, *see* ECF No. 1-10, PageID #s 156, 167, and its First Amended Claim for Damages, *see* ECF No. 1-5, PageID #s 80, 96. The court cannot presently say whether that invoice was a mistake or whether Potter intended to personally receive specific financial benefits flowing directly from the Services Agreement. In short, this court is unable to conclude that Potter should be estopped on a direct benefits theory from refusing to arbitrate claims against her personally.

### b. Judicial Estoppel.

Both Legacy Carbon and Potter say that judicial estoppel should apply in this case. "The use of equitable estoppel is within a district court's discretion." *Bridas S.A.P.I.C.*, 345 F.3d at 360. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). Generally, the doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749

(2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).

The purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (citations omitted). "Because the rule is intended to prevent 'improper use of judicial machinery,' . . . judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Id.* at 750 (citations omitted).

A court considers several factors when deciding whether to apply judicial estoppel to a particular case. First, the court considers whether a party's later position is "clearly inconsistent" with its earlier position. *Id.* (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)). Second, the court examines whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). Third, the court looks to "whether the party seeking to assert an inconsistent position

would derive an unfair advantage or impose an unfair detriment
on the opposing party if not estopped." *Id.* at 751.

There are no "inflexible prerequisites or an
exhaustive formula" when determining whether judicial estoppel
should apply to a particular case. *Id.* The court may consider
additional factors based on the specific facts and context of a
case. *Id.*

This court declines to apply judicial estoppel to
Potter. There is no evidence before this court about any
response by Potter to any claim asserted against her in any
prior proceeding. The record lacks any information as to
whether Potter contemplated that the Stipulation's provision
included claims against her individually. In light of this
uncertainty, this court cannot say that Potter took inconsistent
positions.

Potter claims that judicial estoppel should be applied
to Legacy Carbon for taking inconsistent positions with respect
to whether it would assert and pursue third-party claims against
her individually. Potter points to the statement in Legacy
Carbon's amended counterclaim, which says, "[Legacy Carbon] has
claims against Tiffany Potter, individually, but which claims
[Legacy Carbon] believes are not properly the subject of this
Arbitration Proceeding." ECF No. 1-7, PageID # 131. However,

Legacy Carbon did address claims against Potter individually the very same day that it filed its amended counterclaim, *i.e.*, PageID # 134, noting that it "has *additional* claims against Potter, but which claims [it] believes are not properly the subject of this Arbitration Proceeding." *Id.*, PageID # 138 (emphasis added).

The record remains extremely confusing, precluding this court from applying judicial estoppel to any party at this time.

**C.    Further Information Is Needed Before Arbitration Will Be Ordered.**

Among the matters that remain unclear are the following:

- Whether Legacy Carbon's counterclaims and third-party claims previously asserted in the arbitration have been addressed in any way in the arbitration by the arbitrator and/or the parties, including by Potter in her individual capacity. If no action was taken, why not?

- What Streamline and Legacy Defendants contemplated when they entered into the Stipulation, agreeing to arbitrate all Legacy Defendants' "third-party claims that could have been raised in the current action."

- What Potter understood, in both her individual
  capacity and in her capacity as Streamline's
  President, when Streamline agreed to the
  Stipulation.

- The corporate structure of Streamline, its
  business organization and employment practices,
  the contents of the operating agreement between
  Streamline and Potter, and Potter's effective
  role in the LLC, including, if applicable, her
  hiring of employees and performance of services
  under Streamline's contracts with other entities.

- What specific benefits Potter received or did not
  receive, directly or indirectly, from the
  Services Agreement and Non-Circumvention
  Agreement, including any monetary benefits and
  anything that might have affected her
  professional reputation.

- What subsequent conduct, if any, Potter took to
  demonstrate that she assumed an obligation to
  arbitrate third-party claims against her.

- Any other factual issues necessary to support any
  theory relied upon, including, but not limited
  to:  assumption, agency, estoppel (direct

benefits and/or judicial), and/or veil-
piercing/alter ego.

This court expresses no view on the substantive issues
raised by the parties relating to the third-party claims against
Potter or any other claims at issue.

**IV.   CONCLUSION.**

Based on the present record, the petition to compel
arbitration is denied without prejudice.  Legacy Carbon may file
an amended petition within thirty days of the date of this
order.  If no amended petition is filed by the deadline,
judgment against Legacy Carbon will be automatically entered.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 28, 2017.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

*Legacy Carbon LLC v. Tiffany Potter*, Civ. No. 17-00231 SOM-KSC, ORDER DENYING
WITHOUT PREJUDICE PETITION TO COMPEL ARBITRATION OF THIRD-PARTY CLAIMS
AGAINST TIFFANY POTTER.